UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:25-cv-05360-WLH-AJR | Date | June 5, 2026 |
|---|---|---|---|
| Title | ***Feilong Teng et al v. Jin Tao et al.*** | | |

| Present: The Honorable | WESLEY L. HSU, United States District Judge |
|---|---|

| Claudia Garcia-Marquez | None |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [59]**

The Court is in receipt of Defendants' Motion to Dismiss ("the Motion"). (Defendants' Motion to Dismiss, Dkt. No. 59).  The matter is fully briefed, and the Court heard oral argument on May 22, 2026.  For the reasons explained herein, the Court **GRANTS** in part and **DENIES** in part the Motion.

## I.    BACKGROUND

Plaintiffs Feilong Teng and Heilongjian Tang Hu Kung Fu Catering Co., Ltd. (collectively, "Plaintiffs") sued Defendants Jin Tao, JJMLC, Inc., THKFHP108 Inc., Meiyan Locke and Jason Locke (collectively, "Defendants") for (i) Unregistered Trademark Infringement and Unfair Competition Under 15 U.S.C. § 1125(a); (ii) False Association and False Designation of Origin Under 15 U.S.C. § 1125(a); (iii) Cybersquatting under 15 U.S.C. § 1125(d); (iv) Common Law Trademark Infringement; (v) Unfair Competition under California Business & Professions Code §§ 17200, et seq.; (vi) False Advertising under California Business & Professions Code §§ 17500, et seq.; (vii) Contributory Liability for and/or Inducement of Trademark Infringement, False Association, False Designation of Origin, and Unfair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Competition; (viii) Vicarious Liability for Trademark Infringement, False Association, False Designation of Origin, and Unfair Competition; and (ix) Declaratory Judgment of no Trademark Infringement.  (Compl., Dkt. No. 1).

Plaintiff Teng resides in China and is alleged to be the chairman of Plaintiff Heilongjiang Tang Huo Kung Fu Catering Co., Ltd., a Chinese company that operates restaurant businesses abroad.  (*Id*. ¶ 2).  Plaintiffs allege that their "Tang Huo Kung Fu" brand has operated widely in Asia, including in China and South Korea and has received various awards and media recognition.   (*Id*. ¶ 23). Plaintiffs aver that Tang Huo Kung Fu operates its restaurants and franchise business products under various trademarks and service marks, including the word mark TANG HUO KUNG FU (the "TANG HUO KUNG FU Mark") and the following "well-recognized marks":



(the "Composite Mark")

(the "Image Mark")

(the "Calligraphy Mark")

(*Id*. ¶ 24).

Plaintiff Teng is the owner of the Tang Huo Kung Fu Marks.  (*Id*. ¶ 27).  Plaintiffs contend that their overseas reputation has created recognition of their marks among certain U.S. consumer communities, particularly in Asian communities in the United States, such as in Los Angeles (specifically Los Angeles' Koreatown) and Berkeley,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

California.  (*Id*. ¶ 29).  Plaintiffs do not allege any date on which Plaintiffs first used any asserted mark in United States commerce.  (*See generally* Compl.).  Plaintiffs also do not properly allege that they are the senior users of the relevant mark internationally. Plaintiffs do allege,

> At the time Defendant Tao filed to register the Fraudulent Registration in or around December 2019, Tang Huo Kung Fu already had been in existence for 11 years and had close to 300 restaurants in China and 150 restaurants in South Korea, among other locations. The Tang Huo Kung Fu Marks (in particular, the TANG HUO KUNG FU Mark) were already being used to denote Tang Huo Kung Fu as the single source of the goods and/or services provided under those marks in those countries.

(*Id*. ¶ 33).  But this allegation only claims that Plaintiffs' use of the mark predates Defendants' *registration*, not Defendants' use of the mark.  Thus, Plaintiffs fail to allege any date on which they first used the mark or plead facts to support a claim of their senior use.

Plaintiffs assert that the Tang Huo Kung Fu Marks are registered in many countries, including China, Hong Kong, South Korea, Japan, Taiwan, the United Kingdom, France, Indonesia, Australia and Kazakhstan.  (*Id*. ¶ 26).[1]  Tang Kuo Kung Fu also has pending applications to register one or more of the Tang Huo Kung Fu Marks in the United States, Canada, Laos, Philippines, Singapore, Thailand and New Zealand. (*Id*.).

Defendants operate one or more restaurants in California, including the subject Restaurant that uses the name "TANG HUO KUNG FU SPICY HOT POT."  (*Id*. ¶ 31). Plaintiffs allege that Defendants' restaurant is improperly using their TANG HUO KUNG FU Mark and Calligraphy Mark.  (*Id*.).  Defendant Tao Jin, however, filed a U.S.

---

[1] Plaintiffs only present the Application that they filed with the United States Patent and Trademark Office ("USPTO") (USPTO Application, Dkt. No. 61-4, Ex. 1), but they fail to also provide the actual registration of the mark with the USPTO.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

trademark application on December 17, 2019, which matured into U.S. Trademark
Registration No. 6,100,457 in July 2020.  (Defendants' USPTO Registration, Dkt. No.
59-2, Ex. A).  Defendants registered the following mark:



Plaintiffs contend that Defendants have improperly registered with the USPTO the
aforementioned mark (*Id*. ¶ 32), but the USPTO refused Plaintiffs' application (*see*
USPTO's Invalidation of Plaintiffs' Application, Dkt. No. 59-3, Ex. B, at 1) ("This
trademark application was refused, dismissed, or invalidated by the Office and this
application is no longer active.").  Defendants assert that Plaintiffs carefully avoided
alleging when they first used the mark in the United States because USPTO records make
clear that *Defendants* are the senior users in the U.S. market.  (Defendants' USPTO
Registration, Dkt. No. 59-2, Ex. A; USPTO's Invalidation of Plaintiffs' Application, Dkt.
No. 59-3, Ex. B, at 1).

Defendants filed the instant Motion on January 30, 2026.  (See generally Mot.).
Plaintiffs filed their Opposition (Opp'n, Dkt. No. 61), to which Defendants filed their
Reply (Reply, Dkt. No. 62).  The Court heard oral argument on May 22, 2026.

II.    **DISCUSSION**

   A. **Legal Standard**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim
upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court, however, is not required to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. A claim is considered to have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

Under Rule 15(a), the court should "freely give leave" for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Granting leave to amend is left to the sound discretion of the court, and the court "must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Accordingly, the policy favoring amendments to pleadings is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

### B. <u>Analysis</u>

*1. Plaintiffs' First and Fourth Claims of Trademark Infringement*

Defendants move to dismiss Plaintiffs' first and fourth claims[2] for relief, alleging federal and common law trademark infringement, respectively.  (Mot. at 4).   "[T]o prevail on a trademark infringement claim, a plaintiff 'must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'"  *La Terra Fina USA, LLC v. TerraFina, L.L.C.*, No. 17-CV-03613 NC, 2017 WL 4284167, at *6 (N.D. Cal. Sept. 27, 2017) (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc*., 638 F.3d 1137, 1144 (9th Cir. 2011)).  A party's registration of the mark with the USPTO "constitutes prima facie evidence of the validity of the registered mark and of [an individual's] exclusive right to use the mark on the goods and services specified in the registration."  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp*., 174 F.3d 1036, 1047 (9th Cir. 1999).  Here, Plaintiffs only present the Application that they filed with the USPTO (USPTO Application, Dkt. No. 61-4, Ex. 1), but they fail to allege the actual registration of the mark with the USPTO.  Plaintiffs fail to provide, and the Court is unaware of, authority to support the position that an individual's USPTO application alone demonstrates an individual's valid ownership interest in a mark.

In contrast, Defendants do provide the Court with proof of the registration of the mark with the USPTO (Defendants' USPTO Registration, Dkt. No. 59-2, Ex. A) and also assert that they were the first to use the mark (*see generally* Mot.).  Notably, Defendants

---

[2] The Court analyzes both federal and common law trademark infringement together as it has been recognized that the tests "are the same."  (*Grey v. Campbell Soup Co.*, 650 F. Supp. 1166, 1173 (C.D. Cal. 1986), aff'd, 830 F.2d 197 (9th Cir. 1987)) ("The tests for infringement of a federally registered mark under § 32(1), 15 U.S.C. § 1114(1), infringement of a common law trademark, unfair competition under § 43(a), 15 U.S.C. § 1125(a), and common law unfair competition involving trademarks are the same: whether confusion is likely.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

also provide proof from the USPTO that Plaintiffs' application was refused registration. (*See* USPTO's Invalidation of Plaintiffs' Application, Ex. B, at 1) ("This trademark application was refused, dismissed, or invalidated by the Office and this application is no longer active."). Plaintiffs have thus failed to allege, and it appears cannot allege, that they have a valid ownership interest in the mark at issue.

In opposition to the Motion, Plaintiffs rely on the famous mark exception to allege that they have priority in the United States. (Opp'n. at 9). "A fundamental principle of trademark law is first in time equals first in right." G*rupo Gigante SA De CV v. Dallo & Co*., 391 F.3d 1088, 1093 (9th Cir. 2004). "But things get more complicated when to time we add considerations of place, as when one user is first in time in one place while another is first in time in a different place. The complexity swells when the two places are two different countries." *Id*. The Ninth Circuit recognized the principle that the first in time rule is "not absolute," (*id*.) rather the Ninth Circuit adopted a "famous mark exception to the territoriality principle[3]" under which trademark rights may be recognized in the United States even where the senior user's prior use of the mark occurred exclusively in a foreign country and a junior user subsequently used the same mark domestically. *Id*. at 1094. In *Grupo Gigante*, the plaintiff used the relevant mark for decades before the defendant used it, but the plaintiff's use was in Mexico. *Id*. In the United States, specifically the San Diego area, the Defendants were the first users of the relevant mark. *Id*.

When two countries are involved, the Ninth Circuit found that, for a mark to qualify for the famous mark exception to the territoriality rule, it must have acquired

---

[3] The territoriality principle states that priority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world. *Grupo Gigante SA De CV*, 391 F.3d at 1093.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

"secondary meaning" in the later user's market and "substantial percentage" of consumers in that market must be familiar with mark. *Id*. at 1095. "Secondary meaning refers to a mark's actual ability to trigger in consumers' minds a link between a product or service and the source of that product or service." *Id*. Although a definitive percentage was not provided in the decision to understand what constitutes a substantial percentage, the court found, "where the mark has not before been used in the American market, the court must be satisfied, by a preponderance of the evidence, that a substantial percentage of consumers in the relevant American market is familiar with the foreign mark." *Id*. at 1098. Here, Plaintiffs plead that Tang Huo Kung Fu was founded in China in or around 2008 and became a well-known global brand, using Plaintiffs' Marks. (Compl. ¶¶ 23-24). Plaintiffs also allege that they the relevant mark to denote the source of their goods and services for eleven years. (*Id*. ¶ 33). In supporting their argument that the famous mark exception applies here, Plaintiffs aver that Plaintiffs' popularity has resulted in recognition of Plaintiffs' the mark in relevant Asian communities in the U.S., including in Berkeley, California and Los Angeles, California[4]. (*Id*. ¶ 29).

Here, Plaintiffs assert "widespread recognition by a substantial percentage of consumers in the relevant American market." (*Id*. ¶ 50). To support this claim, Plaintiffs allege that the mark has received recognition within Asian communities in Los Angeles (specifically Koreatown) and Berkeley, which are two cities within the relevant market (California) in which Defendants use the mark. At this stage, the Court is persuaded that Plaintiffs have sufficiently alleged the necessary level of consumer recognition necessary to invoke the famous mark exception to the territoriality principle with respect to the market in which Defendants use the mark.

---

[4] This is relevant as Defendants use the relevant mark in California, and the famous mark exception applies to recognition in the same market where the later user employs the mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

As previously mentioned, however, Plaintiffs failed to allege any date on which they first used the mark or plead facts to support a claim of their senior use.  Although Plaintiffs have plausibly alleged facts to support their position that the famous mark exception applies, the famous mark exception does not eliminate the need to properly allege senior use in the relevant market.  Accordingly, the Court **GRANTS** Defendants' Motion on this basis.

2.  *Plaintiff's Second Claim of False Association*

Defendants move to dismiss Plaintiff's second claim of False Association and False Designation of Origin.  (Mot. at 4).  "While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 29 (2003).  As originally enacted, 15 U.S.C. § 1125, § 43(a) created a federal remedy against a person who uses in commerce either a false designation of origin, or any false description or representation in connection with any goods or services.  *Id*.  Section 43(a) includes two bases of liability: "false designation of origin (also called 'false association') . . . and false advertising." *PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1161 (S.D. Cal. 2023) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014)).  False association claims require that defendants "(1) use[d] in commerce (2) any word, false designation of origin, or false or misleading description, or representation of fact, which (3) is likely to cause confusion, or misrepresents the characteristics of his or another person's goods or services." *Id.* (citation omitted).  "Further, associative confusion may arise not only where a consumer purchases a product thinking it is another, but also where there may be a mistake as to the sponsorship, quality or association of a product." *Id.* at 1162 (cleaned up).  A plaintiff need *not* "establish that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

they had exclusive rights to [a mark] to bring a false designation of origin claim." *Id.*;
*see also* § 27:13. Outline of claim under § 43(a) for trademark infringement, 4 McCarthy
on Trademarks and Unfair Competition § 27:13 (5th ed.) (noting that section 43(a)(1)(A)
does not explicitly require that the plaintiff be the owner of a protectable mark). In fact,
"even a generic mark may serve as the basis for a claim for passing off
under § 1125(a)(1)(A)." *Id.* at \*4 (citing *Blinded Veterans Ass'n v. Blinded Ams.
Veterans Found.*, 872 F.2d 1035, 1042-48 (D.C. Cir. 1989)).

Here, Plaintiffs have adequately and repeatedly alleged that Defendants have used
"Tang Huo Kung Fu" and Plaintiffs' Calligraphy Mark to cause a false association with
Plaintiffs. (Compl. ¶¶ 39, 51, 59). Plaintiffs aver,

> Defendants' unauthorized use of the Tang Huo Kung Fu Marks (including
> the TANG HUO KUNG FU Mark and the Calligraphy Mark) in connection
> with their distribution, sale, offering for sale, marketing, and advertising
> their products and services, including in connection with the Infringing
> Restaurant, constitutes a use in commerce that is likely to cause confusion,
> to cause mistake, or to deceive as to the origin, sponsorship, or approval by
> Tang Huo Kung Fu of Defendants' goods, services, or commercial activities,
> thereby enabling Defendants to benefit unfairly from Tang Huo Kung Fu's
> reputation, goodwill, and success

(*Id*. ¶ 51). As Plaintiffs need not establish that they had exclusive rights to the mark to
bring this claim, they have sufficiently pled "associative confusion" (*PetConnect Rescue,
Inc.*, 656 F. Supp. at 1162) by asserting,

> Not surprisingly, consumers are confused and misled into believing
> Defendants' Infringing Restaurant is affiliated with or sponsored by the
> genuine Tang Huo Kung Fu. In the example shown below, a consumer
> posted on Red Note that he or she was disappointed in the quality of
> Defendants' food, apparently attributing the failure to Tang Huo Kung Fu,
> thus damaging Tang Huo Kung Fu's reputation and goodwill

(*Id*. ¶ 41). For these reasons, the Court finds that Plaintiffs have sufficiently alleged their
second claim for relief of false association under the Lanham Act. Thus, the Court
**DENIES** Defendants' Motion on this basis.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*3.  Plaintiff's Third Claim for Cybersquatting under 15 U.S.C.A. § 1125(d)*

Defendants also move to dismiss Plaintiff's third claim for cybersquatting under 15 U.S.C.A. § 1125(d).  (Mot. at 5).  To prevail under 15 U.S.C. § 1125(d), a plaintiff must establish prior rights in a distinctive mark, that the defendant's domain name is identical or confusingly similar to the mark and that the defendant registered or used the domain name with a bad-faith intent to profit.  *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1218 (9th Cir. 2010).  "The Anti-Cybersquatting Consumer Protection Act establishes civil liability for 'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted with 'bad faith intent to profit from that mark.'"  *Id*. (quoting 15 U.S.C. § 1125(d)).  Thus, to support a cybersquatting claim, plaintiffs must plausibly allege that they own a valid, protectable mark and that Defendants registered, used or trafficked in the domain name with a bad-faith intent to profit.  Here, as set forth above, Plaintiffs have not plausibly alleged that they own a valid, protectable mark, which is a requirement of this claim. Accordingly, the Court **GRANTS** Defendants' Motion on this basis.

*4.  Plaintiffs' Fifth Claim for Unfair Competition under California Law*

Defendants' move to dismiss Plaintiffs' fifth claim.  (Mot. at 6).  "To state a UCL claim, 'a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'"  *Kemp v. Wells Fargo Bank, N.A*., No. 17-CV-01259-MEJ, 2017 WL 4805567, at *15 (N.D. Cal. Oct. 25, 2017) (quoting *Lippitt v. Raymond James Fin. Servs., Inc*., 340 F.3d 1033, 1043 (9th Cir. 2003)).  "This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."  *Cleary v. News*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

*Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994).  Plaintiffs premise the Fifth Claim on two theories:  (i) trademark infringement and (ii) false association and false designation of origin.  (Compl. ¶ 85).

As to the first theory, Plaintiffs' Fifth Claim under California's UCL is derivative of its trademark infringement claim, which the Court has previously found unsuccessful.  Plaintiffs explicitly premise the UCL claim on alleged trademark infringement.  (FAC ¶ 83-88).  When a UCL claim is substantially congruent to federal trademark theories, it rises or falls with those federal claims.  *See Cleary*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (affirming district court's dismissal of the California UCL claims on the basis of the dismissal of the Lanham Act claims).  Because Plaintiffs have not plausibly alleged protectable U.S. rights or priority, Plaintiffs' UCL claim under the first theory of trademark infringement fails.

As to the second theory, Plaintiffs allege that the Fifth Claim is supported by Defendants' actions that constitute false association and false designation of origin.  (Compl. ¶ 85).  As previously stated, the Court finds that Plaintiffs have sufficiently alleged their false association and false designation of origin claim.  The Court thus finds that Plaintiffs' UCL claim under the second theory is adequately alleged.  Accordingly, the Court **GRANTS** Defendants' Motion on the basis of Plaintiffs' UCL claim under the first theory of trademark infringement, but **DENIES** the Motion on the basis of Plaintiffs' UCL claim under the second theory of false association and false designation of origin.

### 5.  *Plaintiffs' Sixth Claim for False Advertising*

Defendants move to dismiss Plaintiffs' sixth claim.  (Mot. at 6).  "[A] product designation that would confuse a consumer is an actional statement under California's False Advertising Law."  *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 632 (C.D. Cal. 2021); *see Faberge, Inc. v. Saxony Prods., Inc.*, 605 F.2d 426, 428 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

1979) ("[A] plaintiff must show that the defendant used a trademark or trade dress likely to cause confusion between the parties' products" to state a claim under Cal. Bus. & Prof. Code § 17500.).  Thus, "plaintiffs alleg[] an actionable statement under section 17500 because they have pleaded actionable trademark infringement."  *Nestle USA, Inc.*, 562 F. Supp. at 632.  Here, Plaintiffs have *not* pleaded actionable trademark infringement for the reasons outlined above.  Thus, the Court **GRANTS** Defendants' Motion on this basis.

> 6. *Plaintiffs' Seventh and Eighth Claims for Contributory and Vicarious Liability*

Defendants move to dismiss Plaintiffs' seventh and eighth claims.  (Mot. at 7).  "To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied."  *Perfect 10, Inc. v. Visa Int'l Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007).  "Vicarious liability for trademark infringement requires 'a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" *Perfect 10*, 494 F.3d at 807 (quoting *Hard Rock Café Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1150 (7th Cir.1992)).

Here, the seventh claim alleges that Defendant Tao Jin is contributorily liable for, or induced, trademark infringement, false association and unfair competition, whereas the eighth claim alleges that Defendant Tao Jin and Defendants Jason and Meiyan Locke are vicariously liable for the same alleged misconduct.  (Compl. ¶¶ 94, 103).  Both claims of trademark infringement and the UCL violations necessarily depend on the existence of adequately pleaded direct trademark infringement.  As explained above, Plaintiffs fail to plausibly allege valid, protectable trademark rights or direct infringement under the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Lanham Act or common law.  As contributory and vicarious liability cannot exist in the absence of the underlying claims of trademark infringement and violations of the UCL, contributory and vicarious liability fail as a matter of law as to these two underlying claims.

Additionally, Plaintiffs seek contributory and vicarious liability for their False Association claim.  "Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement."  *A & M Records, Inc. v. Napster*, 239 F.3d 1004, 1020 (9th Cir.2001); *see Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc*., 907 F.Supp. 1361, 1373–74 (N.D.Cal.1995) (framing issue as "whether Netcom knew or should have known of" the infringing activities).  Additionally, "'[v]icarious liability 'means that the act or omission of one person . . .  is imputed by operation of law to another' without regard to fault."  C*hee v. Amanda Goldt Prop. Mgmt*., 143 Cal. App. 4th 1360, 1375 (2006) (quoting *Srithong v. Total Investment*, 23 Cal. App. 4th 721, 726 (1994)).  In their Complaint, Plaintiffs, to support their contributory liability claim, allege, "Defendant Tao knew or had reason to know of Tang Huo Kung Fu's rights in the Tang Huo Kung Fu Marks and that JJMLC, THKFHP108, and/or the Locke Defendants would be engaging in infringement, false association, and unfair competition through use of the Fraudulent Registration."  (Compl. ¶ 96).  Plaintiffs also state, "Defendant Tao's agreements or relationship with JJMLC, THKFHP108, and/or the Locke Defendants permit Tao to have direct control and/or monitoring of the Infringing Restaurant, including the use of the mark that is the subject of the Fraudulent Registration in connection with the Infringing Restaurant."  (*Id*. ¶ 97).

Further, to support their vicarious liability claim, Plaintiffs aver, "Defendants have an apparent or actual partnership, authority to bind one another, and/or joint ownership or control over the use of the Tang Huo Kung Fu Marks in connection with the Infringing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Restaurant." (*Id.* ¶ 105). Plaintiffs contend that this allegation creates vicarious liability for Defendants Tao and Defendants Jason and Meiyan Locke. (*Id.*). Accordingly, the Court agrees and finds that Plaintiffs sufficiently plead contributory and vicarious liability as to their False Association Claim.

Thus, the Court **GRANTS** Defendants' Motion on the basis of contributory and vicarious liability as to trademark infringement and unfair competition under California law but **DENIES** the Motion on the basis of false association.

       7.  *Plaintiffs' Ninth Claim for Declaratory Judgment*

Defendants move to dismiss Plaintiffs' ninth claim. (Mot. at 7). Here, Plaintiffs assert, "Tang Huo Kung Fu seeks and is entitled to a declaratory judgment that it and its licensee do not infringe the Fraudulent Registration and/or any of Defendant's alleged trademark rights related to 'Tang Huo Kung Fu.'" (Compl. ¶ 113). Plaintiffs' Ninth Claim baldly asserts that they "do not infringe," yet it provides no factual allegations to support non-infringement. (*See generally* Compl.). Further, although Plaintiffs allege that Defendants' use of the mark is likely to cause confusion, it has failed to sufficiently allege the "fraudulent" nature (Compl. ¶ 113) and invalidity of Defendants' protectable interest, which is established by Defendants' registration of the mark (Defendants' USPTO Registration, Dkt. No. 59-2, Ex. A). Thus, the Court **GRANTS** Defendants' Motion on this basis.

       8.  *Plaintiffs' Tenth Claim of Cancellation of the Fraudulent Registration under 15 U.S.C. §§ 1064(3), 1119)*

Defendants move to dismiss Plaintiffs' tenth claim. (Mot. at 8). "In alleging fraud or mistake, party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9; *In re Bose Corp.*, 580 F.3d 1240, 1243-45 (Fed. Cir. 2009). "Fraud in procuring a trademark registration or renewal occurs when an applicant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

knowingly makes false, material representations of fact in connection with his application." *Torres v. Cantine Torresella S.r.*l., 808 F.2d 46, 48 (Fed.Cir.1986). A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof. W.*D. Byron & Sons, Inc. v. Stein Bros. Mfg. Co.*, 54 C.C.P.A. 1442, 377 F.2d 1001, 1004 (1967). Indeed, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence. There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party." *Smith Int'l, Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (T.T.A.B.1981).

Plaintiffs' fraud theory depends on their assertion that they, not Defendants, were the rightful owners of the mark in 2019. (Compl. ¶¶ 115-26). Plaintiffs' insufficient allegations of foreign fame and diaspora recognition do not establish U.S. use or ownership. Without a plausible allegation that Plaintiffs possessed superior U.S. rights at the time of the trademark application, Plaintiffs cannot demonstrate that any USPTO statement about ownership or others' rights was false, much less knowingly false. Similarly, Plaintiffs fail to allege facts demonstrating that any specific USPTO submission was actually false, material or made with an intent to deceive, which is necessary for this Court to cancel Defendants' trademark registration. *See In re Bose Corp.*, 580 F.3d at 1243 ("Several of our sister circuits have also required proof of intent to deceive before cancelling a trademark registration."); *see, e.g., Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir.2001) (stating that an affidavit was fraudulent only if the affiant acted with scienter). Thus, the Court **GRANTS** the Motion as to this claim under Plaintiffs' theory of priority of use.

Moreover, the Complaint asserts that Defendants submitted specimens that "did not accurately and fully reflect Defendant's usage," (Compl. ¶ 36) based on the allegation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

that Defendants also allegedly used Plaintiffs' Calligraphy Mark.  But Plaintiffs failed to allege facts demonstrating that the alleged Calligraphy Mark was used during the trademark examination period or that such use rendered the submitted specimens misleading or false.  If the alleged Calligraphy Mark was not used in commerce at the relevant time, it cannot support a fraud allegation.

Notably, Plaintiffs baldly recite legal conclusions that Defendant Tao "hid" information (Compl. ¶ 36) and acted in bad faith, without identifying what specific statement was false, why it was false, how the USPTO relied on it or any facts supporting an inference of specific intent to deceive.  These conclusory allegations are insufficient. *See Illyrian Imports, Inc. v. ADOL Sh.p.k.*, 2022 WL 970321, at 19 (C.D. Cal. Mar. 30, 2022) (dismissing fraud claim for lack of particularized allegations).  Accordingly, the Court **GRANTS** the Motion with respect to this claim insofar as it is predicated on Plaintiffs' theory that Defendants committed fraud on the USPTO.

Additionally, under the Tenth Claim, Plaintiffs separately allege that Defendants' use of their mark in conjunction with Plaintiffs' calligraphy mark misrepresents that the restaurant is sponsored by or affiliated with Plaintiffs' restaurant chain.  In relevant part, 15 U.S.C.A. § 1064(3) allows for cancellation of a mark if the registered mark is being used by or with the permission of the registrant "so as to misrepresent the source of the goods or services on or in connection with which the mark is used."  In the Complaint, Plaintiffs state, "[t]he [f]raudulent [r]egistration and mark are being used to misrepresent the source of the goods or services on or in connection with which the mark is used." (Compl. ¶ 118).  Plaintiffs also contend, "Defendants' use of the mark . . . purports to signify that Defendants' goods and services are offered or sponsored by Plaintiffs, or that Defendants' Infringing Restaurant is affiliated with Plaintiff's well-known Tang Huo Kung Fu restaurants throughout Asia."  (*Id*. ¶ 117).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

To support their argument, Plaintiffs cite *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697 (4th Cir. 2016).  The Fourth Circuit held, "[t]o determine if a petitioner falls within the protected zone of interests, we note that § 14(3) pertains to the same conduct targeted by § 43(a) false association actions—using marks so as to misrepresent the source of *goods*."  *Belmora LLC*, 819 F.3d at 714-15 (emphasis added).  The court in *Belmora LLC* found that the Lanham Act authorized the defendant to bring its § 14(3) action against the plaintiff.

At oral argument, Plaintiffs demonstrated how the decision in *Belmora LLC*, supports Plaintiffs' position here, despite *Belmora* involving goods (over-the-counter pain relief products) (*id*. at 701) whereas the instant case relates to a restaurant, a service. The Court finds that Plaintiffs have sufficiently alleged that Defendants' use of the mark could cause consumers to falsely associate Defendants' restaurant with Plaintiffs' chain. The Court is also persuaded that Plaintiffs have plausibly alleged that consumers may believe Defendants' restaurant originates from or is affiliated with Plaintiffs' restaurant chain.  As Plaintiffs have plausibly alleged that Defendants' use of its mark falsely associates Defendants' restaurants with Plaintiffs' chain, Plaintiffs have also sufficiently demonstrated that Defendants' use of their mark in conjunction with Plaintiffs' calligraphy mark misrepresents that the restaurant is sponsored by or affiliated with Plaintiffs' restaurant chain.  Accordingly, the Court **DENIES** the Motion as to this claim under misrepresentation of the source.  Thus, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion on this basis.

### III.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED** in part and **DENIED** in part as follows:  the Motion is **GRANTED** as to Plaintiffs' First Claim for Relief of Federal Trademark Infringement, Plaintiffs' Third Claim for Relief of Cybersquatting, Plaintiffs'

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Fourth Claim For Relief of Common Law Trademark Infringement and Plaintiffs' Fifth Claim for Relief of Unfair Competition Under California Law with respect to Plaintiff's theory of Trademark Infringement.  The Motion is also **GRANTED** as to Plaintiffs' Seventh and Eighth Claims for Relief of contributory and vicarious liability as to Plaintiffs' Trademark Infringement and UCL claims, Plaintiff's Ninth Claim for Relief of Declaratory Judgment and Plaintiffs' Tenth Claim for Relief of Cancellation of Fraudulent Registration under Plaintiffs' theories of priority of use and Defendants' commission of fraud on the USPTO.

The Motion is **DENIED** as to Plaintiffs' Second Claim for Relief of False Association Claim under the Lanham Act and Plaintiffs' Fifth Claim for Relief of Unfair Competition Under California Law with respect to Plaintiffs' theory of False Association and False Designation of Origin.  The Motion is also **DENIED** as to Plaintiffs' Seventh and Eighth Claims for Relief of contributory and vicarious liability of their False Association Claim.  The Motion is also **DENIED** as to Plaintiffs' Tenth Claim for Relief of Cancellation of Fraudulent Registration under Plaintiffs' theory of misrepresentation of the source.

Should Plaintiffs wish to file an amended complaint to address the deficiencies identified in this Order, they must do so within 21 days of this Order.

**IT IS SO ORDERED.**